# Exhibit C
# Holland January 5, 2018 Material Terms Acceptance Letter



Jon E. Holland
DIRECT 256.512.0113
EMAIL  jholland@maynardcooper.com

January 5, 2018

VIA E-MAIL – bakerlaw@aol.com

Jeffrey S. Baker, Esq.
Baker & Associates
Suite 100
Two West Hill Place
Boston, MA 02114

Re:   The Plum Island Soap Company / 1818 Farms, LLC ("1818 Farms")

Dear Mr. Baker:

I am in receipt of your letter of December 22, 2017.

In your letter, you allege that 1818 Farms intentionally adopted a "confusingly similar mark, identical trade dress and virtually identical marketing materials." First of all, for at least the reasons stated in my letter of October 27, 2017, we disagree with your conclusion regarding whether the marks at issue are confusingly similar. In addition, irrespective of this issue, your allegations that 1818 Farms was aware of your client's The Man Can mark and trade dress and that 1818 Farms intentionally adopted a confusingly similar mark and trade dress are simply untrue.

In fact, at the time 1818 Farms adopted its mark and trade dress, it was unaware that the Plum Island Soap Company even existed. Further, as evidenced by my letter of October 27, there is a plethora of other companies that package non-paint products in paint cans, including many uses of paint cans for packaging men's body care products. By selling products in paint cans, 1818 Farms is engaging in a business practice common to many companies, and contrary to your assertions, there is no evidence that 1818 Farms acquired the idea of using paint cans for packaging its products specifically from the Plum Island Soap Company.

In addition, you state in your letter that the alleged similarity in marketing materials makes it clear that 1818 Farms copied your client's mark and trade dress. The marketing materials at issue appear to be a photograph for an advertisement of our client's products attached to David Herlihy's letter of October 11. Even if 1818 Farms arranged the products in such advertisement, we disagree with your conclusions. However, you should know that 1818 Farms had absolutely no role in either arranging or photographing the products in the advertisement at issue. The only place such advertisement can be found is in the catalogue, website, or other advertising materials of a specific third-party retailer. This particular retailer generates its own advertising content without any input or control from 1818 Farms as to the arrangement of products within its advertisements. 1818 Farms did not supply the retailer with an image to use for the advertisement but rather *mailed its products in bulk* to the retailer who then generated the advertisement, including arranging the products and capturing an image of the products, without any input from 1818 Farms.

Jeffrey S. Baker
January 5, 2018
Page 2

Given that 1818 Farms had no input or control over the arrangement of products in the advertisement at issue, it is impossible for the advertisement to be probative of any intent by 1818 Farms to copy your client's mark and trade dress. You will note that the advertisements that appear on our client's website and elsewhere, with the exception of the aforementioned retailer, are different than the one referenced in Mr. Herlihy's letter. Your client's allegations about intentional infringement and the possibility of recovering attorney's fees and punitive damages appear to be based on false factual assumptions about the advertisement at issue and, therefore, lack merit.

For at least the reasons stated in my letter of October 27, 1818 Farms continues to believe that there is not a likelihood of confusion between its mark and your client's The Man Can mark. In addition, to the extent that your client does have any valid trademark rights in its trade dress, we observe that those rights must exist at common law since your client has no federal trademark registration that predates our client's use of its trade dress. At common law, 1818 Farms believes that it likely has valid trademark rights for its trade dress in the geographic regions in which it has been distributing products for many years. These are valid rights that our client will have to voluntarily abandon in order to resolve this dispute according to your proposed settlement.

Nevertheless, in an effort to quickly resolve this dispute in an amicable manner, our client is willing to consider surrendering these trademark rights and adopting a new mark and trade dress even though it does not believe that it is legally obligated to do so. Although 1818 Farms has not made any final decisions about a new mark or trade dress, our client believes that it has found two alternatives that are both agreeable to 1818 Farms and also should address your client's concerns. Attached are images of the two alternatives, one being a leather pouch and the other being a wooden crate. Assuming that your client agrees that neither of these alternatives would infringe its trademark rights, we believe that a settlement along the lines proposed in your letter is possible. Below please find our response to each of the settlement terms stated in your letter (with the original terms from your letter in bold).

1. **1818 Farms will tender a lump sum payment of fifteen thousand dollars ($15,000.00), payable to the Plum Island Soap Company.** 1818 Farms notes that it will incur significant costs to voluntarily transition its existing inventory to a new logo and trade dress. Even though 1818 Farms does not believe it is under any legal obligation to tender a payment of any kind to your client, it is agreeable to tendering a lump sum payment of five thousand dollars ($5,000) in order to resolve this dispute amicably and quickly.

2. **1818 Farms will acknowledge the validity of Plum Island Soap Company's Trade Dress ("Trade Dress").** 1818 Farms is agreeable in principle to this term provided that the "Trade Dress" is clearly defined in the settlement agreement to the satisfaction of 1818 Farms.

3. **1818 Farms will agree to be permanently enjoined from all further use of the Trade Dress and Man Can trademark any other designations likely to cause confusion with Plum Island Soap Company's trademarks and Trade Dress ("Plum Island IP").** 1818 Farms is agreeable in principle to this term provided that the "Plum Island IP" is clearly defined in the settlement agreement to the satisfaction of 1818 Farms and the injunction is appropriately limited to the relevant goods (*i.e.*, toiletries products marketed specifically to men). We are assuming that "permanently enjoined" does not imply any type of court action since an out-of-court settlement is currently contemplated.



Jeffrey S. Baker
January 5, 2018
Page 3

4. **In the event 1818 Farms violates the injunction against the use of the Plum Island IP, or if Plum Island has to enforce the terms of the settlement agreement, 1818 Farms will be responsible for all costs and attorney's fees incurred by Plum Island Soap Company, including a liquidated damages payment of seventy-five thousand dollars ($75,000.00).** 1818 Farms is agreeable in principle to this term if the Plum Island Soap Company is the prevailing party provided that the Plum Island Soap Company agrees to pay 1818 Farms for all costs and attorney's fees if 1818 Farms is the prevailing party.

5. **Each party shall release the other party from all claims, agree to keep the details of this settlement confidential, and not make any public disparaging comments regarding the other party.** 1818 Farms is agreeable in principle to this term.

6. **The principles of 1818 Farms will also enter into the Settlement in their capacity as individuals; This is a letter of intent and shall become binding; the parties agree however to negotiate and execute a settlement agreement.** 1818 Farms is agreeable to entering into settlement in their capacity as individuals if a mutually-agreeable settlement agreement is reached. 1818 Farms does not agree that this is some kind of binding letter of intent and will only be bound by a mutually-agreeable settlement agreement that is executed by all parties.

The above terms constitute a proposed framework for settlement, and any settlement agreement would also be required to contain releases and other standard terms mutually acceptable to all parties. I am available to discuss the terms of this proposed settlement framework if that would be helpful. Feel free to contact me if you would like to schedule a time for a telephone call. This constitutes an offer of compromise pursuant to Rule 408 of the applicable rules of evidence. Nothing herein should be construed as an admission or waiver of any right, remedy or defense available to 1818 Farms.

Sincerely,

Jon E. Holland

cc: Tod A. Dodgen, Esq.



MAYNARD
COOPER GALE





