FILED
2018 Mar-07 PM 04:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

Exhibit D
Long Form

SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into as of January 22, 2018 (the "Effective Date"), by and between Plum Island Soap Company, a limited liability company organized under the laws of the Commonwealth of Massachusetts with an address at 205 Northern Blvd., Newburyport, MA 01950 of the one part ("PISC") and Natasha McCrary, an individual, with an address at 24889 Lauderdale Street, Mooresville, Alabama 35649 and 1818 Farms, LLC, a limited liability company organized under the laws of the State of Alabama with an address at 4845 High Street, Mooresville, AL 35649 of the other part (individually and collectively "1818"). All parties to this Agreement are collectively referred to herein as the "Parties," and each may be referred to individually as a "Party." All of the Parties are jointly and severally liable for the duties, responsibilities, and obligations and performances hereunder.

**WHEREAS**, PISC is the owner of the trademark THE MAN CAN ® (the "Man Can Mark") registered on the Principal Register of the United States Patent and Trademark Office, Registration No. 3833999 (the "Registration"); and

**WHEREAS**, PISC has, since at least as early as 2004, been using vertical cylindrical vessels with flat bottoms and sealed tops or lids acting as containers for toiletries as trade dress in interstate commerce (the "PISC Trade Dress"; the Man Can Mark, The Registration, and the PISC Trade Dress are sometimes collectively referred to herein as the "PISC Intellectual Properties");

**WHEREAS**, PISC is the owner of the PISC Intellectual Properties throughout the United States;

**WHEREAS**, 1818 began using the designation "The Man of the Farm Grooming Can" and vertical cylindrical vessels with flat bottoms and sealed tops or lids acting as containers for toiletries as trade dress in interstate commerce;

**WHEREAS**, PISC, through its counsel demanded that 1818 cease and desist all use of The Man of the Farm Grooming Can designation, the PISC Intellectual Properties, and any other designations likely to cause confusion with the PISC Intellectual Properties; and

**WHEREAS**, following negotiations in which each of the Parties has been represented by its own counsel, the Parties have agreed to fully and finally settle and compromise all differences and disputes between them arising out of or related

to the PISC Intellectual Properties; settle, compromise and resolve the dispute on the terms and conditions set forth below;

**NOW THEREFORE**, in consideration of the above recitals and the payment, mutual promises and releases set forth below and for other good and valuable consideration, the receipt and sufficiency of which the Parties hereto acknowledge, and intending to be legally bound, the Parties agree as follows:

1. **Payment by 1818**.  1818 hereby agrees to pay to PISC the single and total sum of Fifteen Thousand Dollars ($15,000.00) (the "Settlement Payment") by wire transfer to the order of Jeffrey S. Baker, Esq., Attorney for PISC promptly upon full execution of this Agreement in good funds. Wiring instructions will be provided to counsel by separate letter once the Settlement Agreement is executed.

2. **Acknowledgement of Ownership and No Challenge**. 1818 hereby acknowledges that PISC is the owner in the United States of PISC Intellectual Properties, including but not limited to all right, title and interest in and to: (a) the Man Can Mark, and the Registration; and (b) The PISC Trade Dress. Furthermore, 1818 acknowledges that The Man Can Mark is valid, that the Registration is valid and subsisting, that the Man Can Mark has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065, and that the PISC Trade Dress is valid. 1818 shall not at any time or for any reason challenge the validity of the PISC Intellectual Properties, the Man Can Mark, the Registration, and/or the PISC Trade Dress or PISC's ownership thereof.

3. **Cessation of Use of the PISC Intellectual Properties**. 1818, its affiliates, and each of 1818's respective officers, directors, agents, employees and all those acting in concert or participation with any of them, shall themselves and cause all other persons or entities under their control to on or before the Effective Date permanently cease all use of: (a) The Man of the Farm Grooming Can designation; (b) the Man Can Mark; (c) The PISC Trade Dress; and (d) any word, term, name, symbol, or device (or any combination thereof) that is identical or confusingly similar to, or a colorable imitation or dilutive of, The Man Can Mark, the PISC Trade Dress, and/or the PISC Intellectual Properties; and (e) any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of 1818 with PISC or as to the source or origin of, or sponsorship or approval by, PISC of 1818's commercial activities.

4. **Abandonment of Rights**. 1818 hereby declares its voluntary, intentional and irrevocable abandonment with prejudice of any and all rights in and to The Man of The Farm Grooming Can mark and any word, term, name, symbol or device (or any combination thereof) that is identical or confusingly similar to, or a colorable imitation or dilutive of, the Man Can Mark, the PISC Trade Dress, and/or the PISC Intellectual Properties.

5. **Removal of Materials from the Marketplace**. 1818 shall promptly take all necessary steps to remove from public view and access all materials, including all products, signs, displays, labels, order forms, websites, and promotional and packaging materials, that use, feature, or bear: (a) The Man of the Farm Grooming Can designation; (b) the PISC Intellectual Properties; (c) The Man Can Mark; (d) The PISC Trade Dress; (e) any word, term, name, symbol, or device (or any combination thereof) that is identical or confusingly similar to, or a colorable imitation or dilutive of, The Man Can Mark, the PISC Trade Dress; and (e) any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of 1818 with PISC or as to the source or origin of, or sponsorship or approval by, PISC of 1818's commercial activities.

6. **Future Trademark Applications**. 1818 shall not apply for, prosecute, maintain, or enforce, or seek to have any third party apply for, prosecute, maintain or enforce for 1818's benefit, any registration for any mark that is identical or confusingly similar to, or a colorable imitation or dilutive of: (a) the Man Can Mark; and/or (b) The PISC Trade Dress; and/or (c) any word, term, name, symbol, or device (or any combination thereof) that is identical or confusingly similar to, or a colorable imitation or dilutive of, The Mark, and/or the PISC Trade Dress on any federal or state trademark registry.

7. **Release of 1818 Releasees**.  Upon PISC's receipt of the Settlement Payment provided for in Paragraph 1 hereof, PISC and Michele Diodato, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns, and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them (collectively "PISC Releasors"), hereby release and discharge Natasha McCrary, and 1818 Farms, LLC together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of

the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them (collectively "1818 Releasees"), from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which PISC, has or may have had, against the 1818 Releasees, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from PISC Intellectual Properties, provided however, notwithstanding the foregoing, this release shall not be construed to prevent PISC from asserting its rights to enforce the terms of this Agreement, in the event of a breach or threatened breach by the 1818 Releasees of any of its obligations under this Agreement.

8.     **Release of PISC Releasees**. Natasha McCrary, and 1818 Farms, LLC, for themselves and for their predecessors, successors (including any trustee or debtor-in-possession), heirs, assigns, affiliates, attorneys, insurers, and reinsurers (collectively "1818 Releasors") hereby now and forever fully and completely release and discharge Michele Diodato, and PISC, their current and former parents and subsidiaries, predecessors, successors (including any trustee or debtor-in-possession), assigns, affiliates, attorneys, insurers, reinsurers, officers, directors, members, principals, commissioners, shareholders, owners, agents, consultants, and employees (collectively "PISC Releasees"), of and from any and all actions, suits, claims, duties, causes of action, demands, obligations, liabilities, rights, damages (including punitive or exemplary damages), or liability of any nature whatsoever, of any kind, whether known or unknown, asserted or unasserted, whether at law or in equity, which 1818 Releasors now have, or ever had, or may have in the future arising out of, based upon or attributable to, in whole or in part, or relating in any manner to any acts or omissions related to or arising from The Man of the Farm Grooming Can, The Man Can Mark, the PISC Trade Dress and/or the PISC Intellectual Properties. The foregoing release also expressly includes, without limitations, any claims or causes of action for bad faith, breach of contract, breach of fiduciary duty, negligence, negligent misrepresentation, unfair and deceptive trade practices, fraud, malicious prosecution, sanctions, statutory or regulatory violation, or punitive, exemplary or extra-contractual damages of any type.

4

180122

9. **Attorney's fees**. In the event that PISC shall have to enforce any part of this Agreement, or to commence any suit or proceeding to prevent any further violation of this Agreement, the prevailing party shall be entitled to receive any expenses or costs, including attorney's fees.

10. **Liquidated Damages/And Consent to the Grant of Equitable Relief**. In the event of a breach or threatened breach by 1818 of any of its obligations under this Agreement, 1818 acknowledges that as of the date hereof, a payment of seventy five thousand dollars ($75,000.00) would be a fair and appropriate measure of liquidated damages for all actions by 1818 in respect of the PISC Intellectual Properties which occurred prior to the date of full execution hereof ("Liquidated Damages Payment"). Accordingly, in the event that any of the terms of this Agreement are violated by 1818, 1818 hereby authorizes PISC or its legal counsel, to file the entry of judgment forthwith in the amount of $75,000 as set forth on Exhibit "A", and after ten (10) days, such judgment shall become enforceable. In addition, and provided further, 1818 hereby agrees that in the event of a breach or a threatened breach by 1818 of any such obligations, PISC shall, in addition to any and all other rights and remedies that may be available to it in respect of such breach, including without limitation the Liquidated Damages Payment, PISC shall be entitled to equitable relief, including a temporary restraining order, an injunction, then entry of a permanent injunction in the form annexed hereto as Exhibit "A', specific performance, and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond). PISC shall give written notice to 1818 that it intends to enter the Agreement For Judgment and Permanent Injunction Proposed Order and after ten days shall enter such judgment and Stipulated Order on Permanent Injunction. Nothing herein shall prevent PISC from seeking relief sooner if the circumstances justify such other application for relief if the circumstances so justify.

11. **Authority.** The Parties warrant and represent to each other that the undersigning representatives have full and complete authority to execute this Agreement and bind them to the terms hereof, that they have taken all necessary actions to duly approve the making and performance of this Agreement, and that no further corporate or other approval is necessary.
No Admission of Liability.  The Parties acknowledge that this Agreement is intended to be a compromise among the Parties with respect to disputed facts and law and should not be considered an admission of liability.

12. **Confidentiality**.  The Parties shall maintain the confidentiality of and shall not disclose the fact and terms of this settlement to any person or entity except as may be

5

180122

necessary for the procurement of legal, accounting, tax, financial or other professional advice. The parties shall not reveal, convey, comment upon, publicize, disclose, discuss or cause to be revealed, conveyed, commented upon, publicized, disclosed, or discussed any of the terms of this Agreement or the amount or range of any payment made pursuant to this Agreement to any person or entity, other than to tax advisors and attorneys, and, then, only on condition that they be advised that they cannot further disclose any of same to others.  In addition, PISC reserves the right to deter any future infringement by disclosing only to the potential infringing party(ies) the acknowledgement that 1818 Farms recognizes the right of ownership of the trademarks and trade dress set forth herein, and the grant of a permanent injunction stated herein.

The Parties agree that this Agreement may be used as evidence in a subsequent proceeding in which one of the parties alleges a breach of this Agreement.  The parties may disclose the terms of this Agreement to the extent required by judicial order or by law or by the rules and regulations of any governmental body or administrative agency, or pursuant to the lawful request of any government official acting in his or her official capacity.

13. **Non-Disparagement**.  The Parties agree that they and each of their respective officers, directors, agents, employees and all those acting in concert or participation with any of them will not provide information, issue statements, or take any action that would disparage or cause embarrassment to the other Party. Nothing in this Agreement, however, shall prohibit or restrict the Parties from making any disclosure of information required by a court of law, or any other proceeding that is consistent with this Agreement, including the provisions of paragraph 10.

14. **Other Assurance**.  Each Party hereto shall provide such further and other written assurances necessary to effectuate the terms and intent hereof. In the event that any Party seeks a court order determining that this Agreement was made at arms-length and in good faith, the Parties, to the fullest extent possible, shall cooperate with and assist each other in obtaining such a determination.

15. **Severability**.  Any provision of this Agreement held by a court of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Agreement and the effect thereof shall be confined to the provision held unenforceable.  The Parties expressly agree that the terms and provisions of this Agreement are contractual in nature and not merely recitals.

6

180122

16. **No Waiver**.  The provisions of this Agreement may not be changed, discharged, terminated, altered or waived orally, but only by an instrument in writing signed by the Parties hereto. The failure by any Party to enforce its rights under this Agreement on any occasion shall not operate as or be deemed to be a waiver of any future enforcement or exercise of such rights.

17. **Construction of Agreement**.  No provision of this Agreement shall be construed against or interpreted to the disadvantage of any Party by any court or other governmental or judicial authority by reason of such Party's having or being deemed to have drafted, prepared or imposed such provision.

18. **Entire Agreement**.  This Agreement shall constitute the entire agreement among the Parties with respect to the subject of this Agreement and shall supersede and replace any previous agreements and understandings between the Parties, whether written or oral, with respect to the subject matter of this Agreement. This Agreement may only be modified in writing and such writing must be mutually executed by the Parties or their respective representatives.

19. **Recitals**.  The foregoing Recitals are incorporated herein by reference as integral parts of this Agreement.

20. **Enforcement**.  Notwithstanding any of the foregoing releases contained in this Agreement, nothing in this Agreement is intended to prevent, waive, or release any Party to this Agreement from seeking enforcement of any of the terms, conditions or other provisions of this Agreement.

21. **Governing Law and Forum Selection**.  This Agreement is to be governed and construed in accordance with the laws of the Commonwealth of Massachusetts, applied without regard to its law applicable to choice of law. The Parties agree that the state and federal courts in and for the Commonwealth of Massachusetts shall have exclusive and sole jurisdiction over all disputes arising between the Parties in relation to this Agreement including, without limitation, proceedings to enforce the terms hereof and disputes relating in any way to the Parties' obligations set forth herein. The Parties also acknowledge that the facts giving rise to the execution of this Agreement and its performance all occurred substantially in the Commonwealth of Massachusetts. 1818 consents to the jurisdiction of the Courts of the Commonwealth of Massachusetts.

22. **Multiple Counterparts**.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which constitute one and the same Agreement.

23. **Notices**.  Any notices required under this Agreement shall be sent by overnight delivery, and any additional methods reasonably designated in writing by a Party (including electronic mail or facsimile).  Notices to PISC shall be sent to: Plum Island Soap Company, 205 Northern BLVD , Newburyport MA 01950; email: Pisoap@aol.com; with simultaneous copies to Baker & Associates, P.C., ATTN:  Jeffrey S. Baker, Esq., Two West Hill Place, Suite 100 Boston, MA 02114, email: bakerlaw@aol.com, and the Law Office of David Herlihy, 14 Staniford Street, Newton, MA 02466, email: david@herlihylaw.com, and notices to 1818 shall be sent to: 1818 Holdings LLC, 4845 High Street, Mooresville, AL 35649, with a simultaneous copy to Jon E. Holland, Esq., Maynard Cooper Cale, 655 Gallatin Street SW, Huntsville, AL, 35801, email: jholland@maynardcooper.com

24. **Voluntary Execution**.  By signing this Agreement, the parties acknowledge that they have read and understand its provisions, and that their agreement is knowing and voluntary for the purpose of making a full and final compromise, adjustment, and settlement of all claims for injuries, losses, and damages related to the subject matter of the above-referenced dispute, and that they have full authority to execute this Agreement. The parties represent and agree that they have been represented by counsel of their own choosing at all times relevant to this negotiation and execution of this Agreement and that they have consulted with counsel prior to signing this Agreement and/or that they voluntarily chose to enter this Agreement without having consulted with an attorney.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day and year first above written.


_____       _____
Plum Island Soap Company             1818 Holdings, LLC
By Michele Diodati                   By: Natasha McCrary
Its: Manager                         Its: Manager
                                     jointly and severally




                                     _____
                                     Natasha McCrary, jointly and severally

8

180122

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF MASSACHUSETTS

```
PLUM ISLAND SOAP COMPANY, LLC  )
Plaintiff,                     )
                               )
          -v-                  )
                               )   CONSENT JUDGMENT AND
                               )   PERMANENT INJUNCTION
Todd Perri, an individual,     )
Natasha McCrary, an individual,)
and 1818 Farms, LLC            )
Defendant(s)                   )
```

    WHEREAS, Plaintiff PLUM ISLAND SOAP COMPANY, LLC, a limited liability company organized under the laws of the Commonwealth of Massachusetts ("Plaintiff"), seeks injunctive relief and monetary damages against defendants Natasha McCrary, an individual, and 1818 Farms, LLC, a limited liability company organized under the laws of the State of Alabama (individually and collectively "Defendants") for infringement of Plaintiff's federally-registered trade mark THE MAN CAN ® (the "Man Can Mark") registered on the Principal Register of the United States Patent and Trademark Office, Registration No. 3833999 and Plaintiff's trade dress consisting of vertical cylindrical vessels with flat bottoms and sealed tops or lids acting as containers for toiletries ("Trade Dress") under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

    WHEREAS, Defendants now stipulate and consent to this Consent Judgment and Permanent Injunction, to its prompt

180121　　　　　　　　　　　　　1

entry by the Court, and to each and every provision, order, and decree herein.

   NOW THEREFORE, upon consent of the parties hereto, it is HEREBY ORDERED, ADJUDGED, AND DECREED:

1.  This Court has jurisdiction over the subject matter of this case and jurisdiction over Defendant.

2.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

3.  Plaintiff is the owner of valid and subsisting United States Trademark Registration No. 3833999 on the Principal Register in the United States Patent and Trademark Office for the THE MAN CAN ® (the "Mark") which has become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065, and trade dress consisting of vertical cylindrical vessels with flat bottoms and sealed tops or lids acting as containers for toiletries ("Trade Dress").

4.  Plaintiff has used THE MAN CAN ®  Mark and Trade Dress in commerce continuously since March 1, 2004.

5.  As a result of its widespread, continuous, and exclusive use of THE MAN CAN ® Mark and Trade Dress to identify Plaintiff the source of their goods, Plaintiff owns valid and subsisting federal statutory and common law rights to THE MAN CAN ® Mark and common law rights to the Trade Dress.

6. Plaintiff's THE MAN CAN ® Mark and Trade Dress is distinctive to both the consuming public and Plaintiff's trade.

7. As a result of Plaintiff's expenditures and efforts, THE MAN CAN ® Mark and Trade Dress has come to signify the high quality of the goods designated by THE MAN CAN ® Mark and Trade Dress. and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.

8. Without Plaintiff's authorization, and upon information and belief, beginning after Plaintiff acquired protectable exclusive rights in its THE MAN CAN ® Mark and Trade Dress, Defendant adopted and began using trade dress identical to Plaintiff's Trade Dress Mark and the mark The Man of the Farm Grooming Can in US commerce.

9. Defendant's acts are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of Defendant's goods and services and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendant's goods and/or services originate from, are associated or affiliated with, or are otherwise authorized by Plaintiff.

10. Defendant, together with all of Defendant's officers, agents, servants, employees, representatives, and assigns, and all other persons, firms, or companies in active concert or participation with Defendant are permanently enjoined and restrained from directly or indirectly:

(a)  manufacturing, distributing/providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute/provide, sell, market, advertise, or promote any goods or services bearing the mark Man of The Farm Grooming Can, THE MAN CAN ® Mark,  the Trade Dress, or any word, term, name, symbol, or device (or any combination thereof) that is identical or confusingly similar to, or a colorable imitation or dilutive of, THE MAN CAN ® Mark, and/or the Trade Dress;

(b)  engaging in any activity that infringes Plaintiff's rights in its THE MAN CAN ® Mark, and/or the Trade Dress;

(c)  engaging in any activity constituting unfair competition with Plaintiff;

(d)  making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant's goods/services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's goods/services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

(e)  using or authorizing any third party to use in connection with any business, goods, or services any

    false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods, and/or services with Plaintiff or tend to do so; and

    (f)   registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the mark Man of the Farm Grooming Can or any other mark that infringes or is likely to be confused with Plaintiff's THE MAN CAN ® Mark, and/or the Trade Dress, or any goods or services of Plaintiff, or Plaintiff as their source.

12.   This Consent Judgment and Permanent Injunction shall be binding upon and shall inure to the benefit of the parties and their respective heirs, successors, assigns, and acquiring companies.

13.   If Defendant is found by the Court to be in contempt of, or otherwise to have violated this Consent Judgment and Permanent Injunction, the parties agree that Plaintiff shall be entitled to all available relief which it may otherwise request from the Court, including the entry of judgment forthwith in the amount of $75,000, sanctions for contempt, damages, injunctive relief, attorneys' fees, costs, and any other relief deemed proper in the event of such violation.

14. The Court retains jurisdiction of this matter for the purposes of enforcing the terms of this Consent Judgment and Permanent Injunction.

15. The permanent injunction shall remain in full force and effect unless and until modified by order of this court.

CONSENTED TO
AGREED AS TO FORM AND CONTENT:

Dated:

_____
PLUM ISLAND SOAP COMPANY, LLC
By Michele Diodati
Its: Manager

_____
1818 Farms, LLC
By:
Its:

_____
Natasha McCrary, jointly and severally

                                           _____  
                                           Jeffrey Baker, Esq.  
                                           Baker and Associates, P.C.  
                                           2 West Hill Place, Suite 100  
                                           Boston, MA 02114  
                                           Telephone: 617 573 9505  
                                           Fax: 617 573 9503  
                                           BBO#544929  
                                           E-mail: bakerlaw@aol.com

                                           _____  
                                           David Herlihy, Esq.  
                                           Law Office of David Herlihy  
                                           14 Staniford Street  
                                           Newton, MA 02466  
                                           Telephone: 617 964-4006  
                                           Fax: 617 964-4016  
                                           BBO#541907  
                                           E-mail: david@herlihylaw.com

                                           Attorneys for PLAINTIFF

                                           _____  
                                           Jon Holland, Esq.  
                                           Maynard Cooper Cale  
                                           655 Gallatin Street SW  
                                           Huntsville, AL, 35801  
                                           Telephone: (256) 512-0113  
                                           email: jholland@maynardcooper.com

                                           Attorneys for DEFENDANT