UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| 1818 FARMS, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> PLUM ISLAND SOAP COMPANY, LLC, <br><br> Defendant. | Civil Action Number <br> **5:18-cv-00135-AKK** |

## MEMORANDUM OPINION AND ORDER

This case arises out of a trademark dispute between two companies selling men's toiletries creatively packaged inside, what are essentially, large paint cans. On October 11, 2017, 1818 Farms, LLC received a letter from Plum Island Soap Company, LLC alleging that 1818 Farms' use of this type of packaging constituted trademark infringement and threatening legal action if 1818 Farms failed to cease its purportedly infringing behavior. Doc. 8-4 at 2–5. After months of negotiations, during which the parties agreed upon a framework for settlement, 1818 Farms surreptitiously filed this lawsuit challenging the propriety of Plum Island's trademark and seeking a declaration that 1818 Farms' marks and trade dress did not infringe on Plum Island's intellectual property. Doc. 1. After receiving notice of the lawsuit, Plum Island filed a separate merits action the next day in the United

States District Court for the District of Massachusetts asserting numerous trademark infringement claims, breach of contract, and assorted state law torts. *See* Compl., *Plum Island Soap Co. v. 1818 Farms LLC*, No 1:18-cv-10214-IT (D. Mass. Feb. 2, 2018), ECF No. 1.

Plum Island now moves to dismiss or stay this action in favor of its lawsuit in Massachusetts or, in the alternative, to transfer this lawsuit to the District of Massachusetts for consolidation, asserting that 1818 Farms' choice of venue is entitled to no deference because it misled Plum Island for purposes of winning the race to the courthouse. Docs. 3; 4; 5.[1] 1818 Farms has subsequently filed its own motion asking the court to enjoin Plum Island from litigating its duplicative lawsuit in Massachusetts and to defer to its choice of venue under the first-filed rule. Doc. 14. Both motions are now fully briefed, docs. 11; 14-2; 17; 25; 27; 29. Upon careful consideration of the facts and the applicable law, the court finds that the District of Massachusetts is the appropriate venue for 1818 Farms' lawsuit.

I. **LEGAL STANDARD**

When dealing with substantially similar cases filed in different "federal district courts . . . the general principle is to avoid duplicative litigation." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Thus,

---

[1] Plum Island also moves to dismiss 1818 Farms' claims based on Plum Island's alleged fraudulent procurement of its trademark registration in violation of 15 U.S.C. § 1120. *See* Doc. 6. Because the court determines that venue in the Northern District of Alabama is improper, it declines to address this argument, reserving it for the transferee court to resolve.

"the fact that a substantially similar action is pending currently in the transferee court counsels in favor of transfer because of the opportunity for consolidation and, thus, the conservation of judicial resources." *Soroka v. Lee Techs. Servs., Inc.*, No. 1:06-CV-0710-TWT, 2006 WL 1734277, at *4 (N.D. Ga. June 19, 2006). To resolve the question of which court should decide the merits of substantially similar cases, however, courts typically apply "[t]he first-filed rule [which] provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013). Therefore, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). Application of the first-filed rule controls not only the merits question, but also determines "which court may decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." *Collegiate Licensing*, 713 F.3d at 78.

"Exceptions [to this general rule], however, are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995)). Indeed, the

"[m]echanical application of the [first-filed] rule could potentially conflict with the rationale underlying it. The inherent fairness in generally giving the first to file the selection of forum diminishes if the purpose of that first filing is simply to preempt the [adversary's] choice of venue." *Barrington Grp., Ltd. v. Genesys Software Sys., Inc.*, 239 F. Supp. 2d 870, 873 (E.D. Wis. 2003). In the Eleventh Circuit, "the party objecting to jurisdiction in the first-filed forum [carries] the burden of proving 'compelling circumstances' to warrant an exception." *Manuel*, 430 F.3d at 1135.

Among the many factors bearing on the existence of "compelling circumstances" include, "'whether the . . . action was filed in apparent anticipation of the other pending proceeding,'" and whether the first-filed action was an attempt at "improper forum shopping." *Id.* at 1135–36 (quoting *Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (1982)); *see also Motorola Mobility, Inc. v. Apple, Inc.*, No. 10-23580-CIV-UU, 2011 WL 13100235, at *5 (S.D. Fla. May 24, 2011) (explaining that compelling circumstances are shown if "the plaintiff engaged in forum shopping or . . . filed the first action in apparent anticipation of the other pending proceeding"). This concern is magnified when considering a "[d]eclaratory judgment action[] brought in the face of clear threats of suit and seeking [a] determination[] that no liability exists . . . if the other party proceeds to file an action alleging an infringement of rights." *Barrington*, 239 F. Supp. 2d at

873–74; *see also Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir. 1993) (finding that an action "for declaratory judgment also merits a closer look, as such an action may be more indicative of a preemptive strike than a suit for damages or equitable relief").

The factors outlined in the venue transfer statute, 28 U.S.C. § 1404, may also "justify an exception to the first-filed rule." *Collegiate Licensing*, 713 F.3d at 79.[2] These include, "the convenience and availability of witnesses . . . or the possibility of consolidation with related litigation." *Genentech*, 998 F.2d at 938; *see also Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.*, 350 F. Supp. 2d 620, 623 (E.D. Pa. 2004) (explaining that "[e]xceptions to the first-filed rule are not rare and are made when justice or expediency require[], including when . . . the balance of convenience favors the second forum") (quotation omitted).

## II. FACTS

On October 11, 2017, Plum Island, through counsel, sent a demand letter requesting that 1818 Farms cease using certain trademarks and product packaging that Plum Island believed infringed on its intellectual property. Doc. 8-4 at 2–5.

---

[2] The familiar factors governing the § 1404 inquiry include: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances." *Manuel*, 430 F.3d at 1135 n.1

5

The letter threatened legal action unless 1818 Farms agreed to comply with Plum Island's request by October 27, 2017. *Id.* at 5. 1818 Farms timely responded to the letter, explaining that, although it disagreed with Plum Island's legal position, it was "interested in resolving this matter amicably and . . . discuss[ing] reasonable measures that could be taken in an effort to address [Plum Island's] concerns regarding alleged trademark infringement." Doc. 8-5 at 2–3.

Roughly a month later, Plum Island responded by sending a second demand letter refuting the legal points raised by 1818 Farms. Docs. 8-6 at 2; 8-7 at 2–5. Plum Island's second letter also included an offer of settlement to remain open until December 8. Doc. 8-7 at 5. Prior to the expiration of this deadline, the parties began negotiating a settlement in earnest, with both sides indicating their interest in reaching an amicable resolution of their dispute. Docs. 8-1 at 6–7; 29-1 at 3–4. Indeed, 1818 Farms sent an email containing a number of alternate packaging designs to Plum Island in the hopes of assuaging any infringement concerns. Doc. 29-1 at 3–4; 29-3 at 34. Plum Island followed these discussions with a third letter, providing a response deadline of December 29 and outlining a framework for settlement consisting of six major terms, including a lump sum payment of $15,000 to Plum Island, and a permanent injunction against 1818 Farms' use of allegedly infringing marks. Doc. 8-8 at 2–3. At 1818 Farms' request, Plum Island extended the response deadline to January 5, doc. 29-1 at 4,

6

and again 1818 Farms indicated its desire to settle. Specifically, while 1818 Farms rejected Plum Island's terms and explained that it did not consider itself bound until the signing of a formal settlement agreement, it also expressly stated "that a settlement along the lines proposed . . . is possible" given certain caveats. Doc. 8-9 at 3–4. In particular, 1818 Farms took issue with the amount of money demanded by Plum Island, proposing instead a $5,000 lump-sum payment, and noting that other more minor aspects of the settlement remained subject to further clarification. *Id.*

On January 17, 2018, Plum Island rejected the proposed $5,000 payment and threatened to sue if 1818 Farms declined to meet its demand for $15,000. Doc. 29-4 at 9. Two days later, the parties held a conference call, where it is undisputed that 1818 Farms agreed to pay the full $15,000 requested by Plum Island and otherwise agreed to the framework for settlement laid out in its prior letter of January 5, 2018. *See* Doc. 25-1 at 5–6. After the call, Plum Island believed that the parties had agreed to mutually acceptable settlement terms, including 1818 Farms' acquiescence to a permanent injunction blocking its use of potentially infringing trademarks or other designations, so long as that injunction was appropriately limited and did not involve court action—an understanding Plum Island communicated to 1818 Farms without any objections. *See Id.* at 6, 17–18; Doc. 8-9 at 3–4.

7

Consistent with its belief that the parties had reached a settlement, counsel for Plum Island emailed to 1818 Farms a hard copy of the proposed settlement agreement, which included a consent judgment for a permanent injunction. Docs. 25-1 at 20; 29-1 at 6–7; 29-4 at 14. The next day, counsel for 1818 Farms acknowledged receipt of the agreement, and indicated that he would send his edits shortly after a meeting he had scheduled for later that afternoon. Doc. 8-6 at 7. Roughly two days later, on January 25, Plum Island inquired about the edits and, at 5:26 p.m., 1818 Farms emailed a redline of the draft agreement to Plum Island indicating its opposition to the included consent judgment. Docs. 8-6 at 7; 29-4 at 33. The email also provided that counsel for 1818 Farms looked forward to further communication and was available for discussion. Doc. 29-4 at 33.

The next morning, at 10:30 a.m., without waiting for Plum Island's response to its proposed revisions, 1818 Farms filed this action for declaratory relief. *See* Doc. 1 at 1. Later that same day, Plum Island responded to 1818 Farms' draft with its own redline, noting that it was agreeable to virtually all of 1818 Farms' suggestions. Doc. 29-4 at 53. Plum Island also explained that, while the consent judgment was, from its perspective, a necessary part of the settlement, it was amenable to offering additional concessions to 1818 Farms. *Id.* This email indicated that the proposed redline constituted Plum Island's "final draft." *Id.*

On January 29, again without revealing that it had already filed suit, counsel for 1818 Farms informed his counterpart that, although 1818 Farms generally agreed with the changes to the settlement agreement proposed by Plum Island, it could not accept the consent judgment. *Id.* at 79. Plum Island responded shortly thereafter indicating its willingness to compromise further, and asking if the settlement talks were at "a dead end." *Id.* at 83. A day later, Plum Island sent another email explaining, from its perspective, the necessity of the consent judgment and expressing the belief that 1818 Farms had already agreed to the provision. Doc. 8-6 at 9–10. The parties scheduled a conference call for February 1, 2018. Doc. 29-1 at 9–10. During the call, it became apparent that compromise was no longer possible and, shortly thereafter, 1818 Farms finally informed Plum Island that it had filed this lawsuit. *Id.* Plum Island filed its own lawsuit in the next day. *Id.*; Doc. 8-1 at 10–11.

## III.  ANALYSIS

There is no dispute that the action presently before this court was filed first, and the court assumes that the lawsuits are similar enough for the first-filed rule to apply. Thus, the narrow question before the court is whether Plum Island has demonstrated the existence of compelling circumstances justifying departure from the first-filed rule and necessitating either the dismissal, stay, or transfer of this action. The court concludes that Plum Island has carried its burden.

Courts routinely decline to apply the first-filed rule "where forum shopping motivated the first-filed action or the first filed action constitutes an 'improper anticipatory filing' made under threat of an imminent suit and asserting the mirror-image of that suit in another district." *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004). In that regard, the sequence of events leading to 1818 Farms' filing of this action is quite telling.[3] It is apparent that negotiations were proceeding fruitfully, and that both parties believed they had reached a mutually acceptable framework to resolve their disagreement. *See* Docs. 8-9 at 3; 29-1 at 3–5. As part of this framework, 1818 Farms agreed "in principle" to a permanent injunction barring it from the use of trademarks and other designations likely to cause confusion with Plum Island's intellectual property, assuming that the injunction did "not imply any type of court action." Doc. 8-9 at 3. Pursuant to this understanding, Plum Island forwarded a hard copy of proposed settlement language, which included a consent judgment acquiescing to the permanent injunction. Docs. 29-1 at 6–7; 29-4 at 14.

After receiving the settlement agreement, 1818 Farms failed to respond by the initial deadline, and instead waited for roughly two additional days before

---

[3] The parties generally agree on the sequence of events, but, unsurprisingly, they disagree on the appropriate interpretation of those events. In particular, the parties dispute whether they ever formally agreed to settle. As the court will explain, the existence of a formal settlement agreement has little bearing on whether the first-filed rule applies here. Thus, the court leaves resolution of the question of whether a binding settlement agreement existed, and all other matters bearing on the substantive legal issues in this case, for the transferee court to decide.

providing its edits, noting, apparently for the first time, its opposition to the consent judgment. Doc. 29-4 at 33. Moreover, 1818 Farms did not inform Plum Island that further negotiations were likely futile or that it planned to initiate litigation. Instead, it filed suit the next morning, *see* doc. 1, while continuing to negotiate with Plum Island over the text of the settlement agreement. *See* Doc. 29-4 at 53, 79, 83. Over the next six days, Plum Island requested specific clarification on whether the consent judgment issue would prove an insurmountable obstacle, a request that 1818 Farms ignored, *id.* at 83, and otherwise consistently sought to resolve the consent judgment issue until the parties' February 1 call clearly revealed that discussions were at an impasse. Doc. 29-1 at 9–10; 8-1 at 10–11. Finally, after the call, 1818 Farms informed Plum Island that it had filed this suit nearly a week earlier. Doc. 29-1 at 9–10.

1818 Farms' conduct reveals a quintessential attempt "to launch a preemptive strike by racing to the courthouse in [its] preferred forum before [the] adversary has a chance to file their action in the forum of their choice." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 557 (S.D.N.Y. 2000). Indeed, after months of productive settlement negotiations, 1818 Farms decided to file suit within three days of receiving the text of the proposed settlement agreement. This abrupt reversal suggests that 1818 Farms drastically reassessed its position on litigation, without informing Plum Island, in light of the included consent judgment

11

and 1818 Farms' knowledge that Plum Island would likely file suit first if it knew that settlement was no longer possible.[4]

Thus, after repeatedly indicating a preference for settlement, *see, e.g.*, docs. 8-5 at 3; 29-3 at 34, and under imminent legal threat if settlement negotiations broke down, 1818 Farms sought to preempt Plum Island's choice of venue by surreptitiously filing a "mirror-image" lawsuit while appearing open to continuing negotiations. *See Soroka*, 2006 WL 1734277, at *4 (collecting cases declining to mechanically apply the first-filed rule when the first-filed action was intended primarily to preempt the adversary's choice of venue). Indeed, the action filed by 1818 Farms simply sought a declaration that it was not infringing on Plum Island's intellectual property, while also pressing a fraudulent procurement claim pursuant

---

[4] In the court's view, the root of this miscommunication is the provisional agreement that 1818 Farms be enjoined from using purportedly infringing marks. It appears that 1818 Farms did not realize that Plum Island intended to enforce this provision through a consent judgment held in escrow, and that this enforcement mechanism represented an unacceptable arrangement. *See* Doc. 29-4 at 33, 53, 79. Fair enough. As explained above, however, despite recognizing this issue right away and reversing its consistent preference for settlement, docs. 29-1 at 8; 29-4 at 33, 1818 Farms led Plum Island into believing the parties were still very close to resolving their disagreement. Even after it had filed its lawsuit, 1818 Farms continued to deceive Plum Island afterward, in an apparent bad faith attempt to extract potential concessions without acknowledging that it had already opted for litigation. *See id.* at 79; Doc. 29-1 at 9–10. These actions compellingly demonstrate that Plum Island, in the interests of equity, should not be deprived "of [its] conventional choice of forum." *Z-Line Designs, Inc. v. Bell'O Int'l LLC*, 218 F.R.D. 663, 665 (N.D. Cal. 2003). Moreover, the application of the first-filed rule here would "thwart settlement negotiations, encouraging intellectual property holders to file suit rather than communicate with an alleged infringer." *Id.* Thus, declining to allow 1818 Farms its choice of forum is consistent with the strong preference of federal courts to encourage potential plaintiffs "to attempt settlement discussions . . . prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before the plaintiff files a complaint." *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1354 (S.D.N.Y. 1992) (quotation omitted).

to 15 U.S.C. § 1120, essentially a defense to a substantive infringement action, *Unique Sports Products, Inc.*, 403 F. Supp. 2d 1229, 1239 (N.D. Ga. 2005) (describing "a charge of fraud in the procurement of a trademark" as a defense). *See* Doc. 1. Thus, it is apparent that 1818 Farms was not seeking to resolve other issues with Plum Island beyond the scope of the substantive infringement action 1818 Farms doubtless anticipated, and instead it had filed suit purely in an attempt to secure its preferred forum. *See Ontel Prods., Inc. v. Project Strategies Corp..*, 899 F. Supp. 1144, 1151 (S.D.N.Y. 1995) (explaining an anticipatory action is potentially proper when it evinces "genuine[] concern[] with obtaining a benefit beyond the scope of what the other party could be expected to bring suit for").

Moreover, the anticipatory nature of this filing bears directly on 1818 Farms' bad-faith attempt to deliberately mislead Plum Island into believing a settlement was imminent thereby encouraging Plum Island to refrain from filing suit so that 1818 Farms could win the race to the courthouse. *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1348 (Fed. Cir. 2005) (explaining that the first-filed rule is favored "in the absence of circumstances making it 'unjust or inefficient' to permit a first-filed action to proceed to judgment").[5] Under such

---

[5] Some district courts have found that the "minimal difference in time between the filing of the two actions, and the lack of progress in either litigation" militate against a routine application of the first-filed doctrine. *See, e.g.*, *Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 2d 574, 576–77 (S.D.N.Y. 1998). This logic is compelling here, where Plum Island filed suit the day after it learned that 1818 Farms had initiated litigation, and neither action has progressed beyond the pleadings. *See* Doc. 8-1 at 10–11.

circumstances, equity demands that the court decline to follow the first-filed rule and instead allow "the second-filed action . . . to proceed to judgment rather than the first." *Z-Line Designs v. Bell'O Int'l, Inc.*, 218 F.R.D. 663, 667 (N.D. Cal. 2003); *Soroka*, 2006 WL 1734277, at *5 (declining to apply first-filed rule to an action transparently filed in anticipation of a subsequent merits suit); *see also Ven-Fuel, Inc.*, 673 F.2d at 1195 (affirming dismissal of a first-filed declaratory judgment action in favor of a subsequent merits action because the district court found that that the declaratory action was an improper anticipatory filing).[6]

In short, this is not a situation where Plum Island slept on its rights. Rather, 1818 Farms manipulated the settlement negotiations in bad faith to secure the first filing advantage after reiterating a desire to settle for months. And, despite tacking on what are essentially defenses to an infringement claim, the request for declaratory relief brought by 1818 Farms mirrors the lawsuit Plum Island filed the day after it learned that 1818 Farms had surreptitiously filed suit while

---

[6] Obviously not every anticipatory filing implies bad faith. Likewise, that the parties engaged in pre-litigation settlement negotiations does not prevent the responsive party from preparing for or initiating litigation. *See Trustco Bank v. Automated Transactions LLC*, 933 F. Supp. 2d 668, 672 (D. Del. 2013) (noting that preparing "for litigation during negotiation[] [is] commonplace" and does not evince bad faith). For example, "if, after settlement discussions have proven fruitless, the party that initially refrained from filing does not proceed to file suit promptly, its adversary could be justified in filing first." *Ontel Prods.*, 899 F. Supp. at 1151. Similarly, if "the adversary was genuinely concerned with obtaining a benefit beyond the scope of what the other party could be expected to bring suit for" a pre-emptive filing would likely prove proper. *Id.* Neither circumstance is present here, however. As explained above, it is evident that 1818 Farms misled Plum Island into believing that negotiations had not broken down and that the parties were, in fact, close to resolving their dispute in an attempt to secure its preferred venue for its duplicative filing.

representing it was negotiating in good faith to finalize the parties' settlement. Under these circumstances, 1818 Farms' declaratory action serves as an additional "red flag" suggesting that the court should decline to apply the first-filed rule. *See Nw. Airlines*, 989 F.2d at 1007 (recognizing an action for a declaratory judgment mirroring a later-filed second suit as a "red flag" that compelling circumstances exist to depart from the first-filed rule). Accordingly, because 1818 Farms' first-filed suit is an improper, anticipatory filing, the court concludes that compelling circumstances exist to depart from the first-filed rule.

1818 Farms contests this finding on two main grounds. First, 1818 Farms maintains that Plum Island had multiple opportunities to file suit and elected not to do so while delaying settlement negotiations without explanation. This contention is unavailing. "The law encourages voluntary settlement of disputes." *Janvey v. Romero*, 883 F.3d 406, 415 (4th Cir. 2018); *see also Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 571 (5th Cir. 1960) (explaining that it is "the policy of the law generally to encourage settlements"). Consequently, courts typically seek to encourage plaintiffs "to attempt settlement discussions . . . prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to instigate litigation in a district of its own choosing." *Capitol Records. Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350, 1354 (S.D.N.Y. 1992) (quotation omitted). While Plum Island certainly did not respond

immediately to all of 1818 Farms' communications, both parties consistently expressed their interest in taking reasonable measures to resolve their differences via a settlement. *See* Docs. 8-5 at 3; 29-3 at 34. Indeed, 1818 Farms expressed no opposition to Plum Island's preferred settlement structure, asserting only that a settlement "along the lines proposed in [Plum Island's] letter [was] possible." Doc. 8-9 at 3. In other words, the negotiations between the parties appeared productive and consistently moved toward a resolution of their underlying disagreement. When discussions ultimately broke down, 1818 Farms manipulated the process in order to file its own lawsuit first by artificially extending the negotiation rather than informing Plum Island that it was no longer willing to settle. 1818 Farms did not even reveal the fact of its filing, giving Plum Island the impression that it was negotiating in good faith, until it was clear a settlement was no longer possible. Docs. 29-1 at 7–10; 8-1 at 8–11.

Moreover, the facts here do not support a finding that Plum Island slept on its rights. *See Ontel Prods.*, 899 F. Supp. at 1151. Instead, 1818 Farms manipulated Plum Island into believing a settlement was imminent while surreptitiously filing this declaratory action in its preferred forum. "At a minimum, [applying the first-filed rule here] would encourage parties interested in protecting their intellectual property rights to file a complaint prior to attempting settlement." *Z-Line*, 218 F.R.D. at 666. The court declines to mechanically

employ the first-filed rule so as to countenance preemptive litigation over every potential instance of trademark infringement. *Id.* at 665 (collecting cases delineating consistent federal policy of encouraging communication with potential infringers rather than reflexively opting for litigation).

Second, 1818 Farms contends that the parties never formally reached a settlement and that insurmountable differences remained over the course of negotiations. This fact has no bearing on whether the application of the first-filed rule is appropriate. Neither party disputes that, 1818 Farms consistently expressed a desire to settle, and that it took numerous steps, including proposing new designs for its trade dress, *see* docs. 8-5 at 3; 29-3 at 34, to resolve the parties' dispute. It is also apparent from the parties' communications that, while some differences remained, a general framework for settlement existed. *See* Docs. 8-9 at 3–4; 25-1 at 4–6. The court does not doubt that both sides acted in good faith during the initial stages of this process. But, as 1818 Farms admits, it misinterpreted the settlement framework, a misunderstanding which became clear to 1818 Farms when it received the formal terms of the agreement. *See* Doc. 29-1 at 5–8. The issue, as explained above, is not that the settlement negotiations eventually broke down, but that, rather than raise the miscommunication issue and continue to negotiate in good faith, 1818 Farms elected to file suit without informing Plum Island that negotiations were at an impasse. Indeed, when Plum Island expressly

17

asked if settlement negotiations were at a dead-end, 1818 Farms ignored the query entirely. Doc. 29-4 at 83. 1818 Farms instead waited for six days to inform Plum Island of its suit, acting only once Plum Island realized the futility of further negotiations. Doc. 8-1 at 10–11. This strategic, manipulative behavior qualifies as an anticipatory filing made in bad-faith regardless of whether a formal settlement agreement was consummated.

Finally, the efficiency and convenience factors delineated by § 1404 also weigh, however slightly, in favor of a Massachusetts venue.[7] Typically, such a slight advantage would prove insufficient to overcome the deference courts show to the plaintiff's choice of forum. *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996). Here, however, this slight advantage, in conjunction with the compelling equitable circumstances outlined above, justifies a transfer. *See Soroka*, 2006 WL 1734277, at *4–5 (noting that although the §1404 factors alone did not justify transfer they did when weighed in combination with the plaintiff's improper anticipatory filing). Although litigating in Massachusetts will certainly pose some inconvenience for 1818 Farms, it has failed to point to any

---

[7] Neither party disputes that 1818 Farms could have filed the instant suit in Massachusetts. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) (explaining that transferring venue pursuant to § 1404 is only appropriate if the transfer is to a court where the action could have been initially filed). Neither venue has an advantage with respect to the convenience factors, as both venues are similarly situated in terms of the location of relevant documents and access to witnesses. Indeed, whether litigation occurs in Massachusetts or Alabama, one party will have to travel a considerable distance. The court therefore agrees with 1818 Farms that "the convenience of either venue is similar." Doc. 25 at 36.

factor, besides the application of the first-filed rule, that strongly favors litigating an Alabama forum. And, critically, the Massachusetts action includes a party, Natasha McCrary, who is not a party to the action before this court. As Plum Island points out, regardless of the forum determination made by this court, an infringement action against McCrary will proceed in Massachusetts. Doc. 27 at 12–13. This fact counsels in favor of transfer to avoid the specter of inconsistent adjudications and to preserve judicial resources. *See, e.g.*, *Barrington Grp.*, 239 F. Supp. 2d at 873 (explaining that "[j]udicial economy is a particularly important concern when two actions involving the same parties and issues are pending in different districts"); *Cent. Money Mortg., Co. v. Holman*, 122 F. Supp. 2d 1345, 1347 (M.D. Fla. 2000) (noting that when a case involving the same central issue and duplicative evidence and witnesses is pending in a separate jurisdiction "[c]onsolidation of the cases would promote judicial economy and efficiency, and avoid problems related to duplicative actions in multiple forums").

## **CONCLUSION AND ORDER**

For these reasons, 1818 Farms' anticipatory filing and bad-faith manipulation of ongoing settlement negotiations, when considered in light of the similar Massachusetts action that encompasses an additional party, strongly indicate that the District of Massachusetts is the proper forum for this proceeding. While the court could simply dismiss this action, *see, e.g.*, *Z-Line*, 218 F.R.D. at

667, for the convenience of the parties, the court elects to **TRANSFER** the action to the District of Massachusetts because "the first-filed rule generally requires the first court to decide whether the first-filed rule should apply, or . . . [whether to] transfer . . . to the second court for consolidation." *Kate Aspen, Inc. v. Fashioncraft-Excello, Inc.*, 370 F. Supp. 2d 1333, 1338 (N.D. Ga. 2005). Accordingly, 1818 Farms' motion to enjoin Plum Island, doc. 14, is **DENIED**, and Plum Island's motion to stay, transfer, or dismiss this action, doc. 5, is **GRANTED**. In light of this ruling, Plum Island's motion to dismiss, doc. 6, and its other motions to change venue, docs. 3 and 4, are **MOOT**. The Clerk is **DIRECTED** to transfer this matter to Judge Indira Talwani of the District of Massachusetts for her to determine whether consolidation with the related suit pending before her is appropriate.

      **DONE** the 3rd day of August, 2018.

                                             _____
                                               **ABDUL K. KALLON**
                                         UNITED STATES DISTRICT JUDGE